STATE OF NEBRASKA, EX REL. SIOUX COUNTY, V. JOHN S. TUCKER, ASSESSOR, ET AL.

FILED OCTOBER 17, 1893.   No. 4781.

1. **Taxation**: IMPROVEMENTS ON LAND held under the pre-emption, homestead, and timber culture laws of the United States, on which final proof has not been made, are subject to taxation against the persons owning such improvements.

2. ———: SCHOOL LANDS: THE LEASEHOLD interest of a tenant of school lands belonging to the state is subject to taxation.

3. ———: ———: IMPROVEMENTS: PURCHASERS. School lands sold by the state, but to which the equitable title of the purchaser has not been completed by full payment of the purchase money, are subject to taxation to the extent of the purchaser's interest therein, such interest to be determined by the amount paid and invested in improvements on such lands.

ERROR from the district court of Sioux county. Tried below before KINKAID, J.

*Hugh T. Conley*, for plaintiff in error:

Improvements owned by claimants on public lands held

by virtue of filings made under the pre-emption, homestead, and timber culture laws of the United States are property subject to taxation. (*McWilliams v. Bridges,* 7 Neb., 423; *Brooks v. Hiatt,* 13 Neb., 503; *Carkins v. Anderson,* 21 Neb., 364; *Paxton Cattle Co. v. First Nat. Bank,* 21 Neb., 646.)

Improvements owned by individuals, companies, and corporations on the school lands of the state of Nebraska, while the title to said lands remains in the state, are property. (Secs. 1, 3, ch. 77, Comp. Stats., 1889.)

All property is taxable unless specifically exempted from taxation by law. (*Turner v. Althaus,* 6 Neb., 75; *Crawford v. Burrell Township,* 53 Pa. St., 219; *Bellinger v. White,* 5 Neb., 401; *Miller v. Hurford,* 13 Neb., 24; *Finch v. York County,* 19 Neb., 57; *Morrill v. Taylor,* 6 Neb., 242; *Wood v. Helmer,* 10 Neb., 75; *Roe v. St. John,* 7 Neb., 141.)

No counsel for defendants.

IRVINE, C.

This action was begun in the district court for Sioux county, for the purpose of requiring the respondents, who were the assessors of the different precincts of that county, to include in their assessment all improvements on land held by individuals under the pre-emption, homestead, and timber culture laws of the United States on which final proof had not been made, and also all other improvements on government land within their precincts; and also to include in their assessment the interests of lessees and purchasers of school lands. The case was submitted by stipulation upon the petition. The district court refused the writ, and the relator seeks to reverse the judgment.

Two questions are involved: First—Are improvements upon government lands, upon which final proof has not been made, subject to taxation? Second—Are the interests of purchasers and lessees of school lands subject to taxation?

1. By section 4 of the enabling act the federal government laid upon the state the obligation that no taxes should be imposed "on lands or property therein belonging to or which may hereafter be purchased by the United States." The object of this provision was to protect the federal government itself from the imposition of such taxes, and not to discharge government lands from taxation after they should cease to belong to the government. It is only the interest of the government which, by the enabling act, is exempt from taxation, and there can be no doubt that the state has power to subject improvements of others upon such lands to taxation. (*People v. Shearer*, 30 Cal., 645.) The question is, has the state exercised that power?

The constitution, article 9, section 1, provides that "the legislature shall provide such revenue as may be needful by levying a tax by valuation so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property and franchises, the value to be ascertained in such manner as the legislature shall direct." Here we have the policy of our revenue laws declared by a command to the legislature to so enact that every person shall pay a tax in proportion to the value of his property. Section 2 provides that the property of the state, counties, and municipal corporations shall be exempt from taxation, and that property used exclusively for agricultural and horticultural societies, for school, religious, cemetery, and charitable purposes, may be exempted. It also provides for deduction in the valuation of lands incumbered by public easements, of the depreciation caused by such easements, and the legislature is given power to exempt the increased value of land by live fences, fruit and forest trees. The general direction in section 1 for the payment of taxes in proportion to the value of all property, together with the expressed power of exempting certain property, found in section 2, implies very clearly an inhibition against the exemption of any property not so specified.

Chapter 38, Compiled Statutes, makes all contracts, promises, assumpsits, or undertakings in good faith, and without fraud, collusion, or circumvention, for the sale, purchase, or payment of improvements made on lands owned by the government of the United States, valid in law and equity and the subject of action.    The validity and force of this statute have been often declared by this court.    As said by the present chief justice in *Brooks v. Hiatt*, 13 Neb., 503 : "Improvements on the public lands are property and a sufficient consideration to sustain a promise to pay for the same."    (See also *Mc Williams v. Bridges*, 7 Neb., 419; *Paxton Cattle Co. v. First Nat. Bank of Arapahoe*, 21 Neb., 621.)    The occupying claimant's act, Compiled Statutes, chapter 63, section 2, expressly recognizes such improvements as property and subject to taxation, by providing that any person in possession of, or claiming any real estate under, a certificate of entry, or under the homestead or preemption laws of the United States, shall be considered as having sufficient title to demand the value of improvements and to demand the amount of all taxes and assessments paid by such claimant or those under whom he claims. As stated by this court in *Bellinger v. White*, 5 Neb., 399, quoting from *Crawford v. Burrell Township*, 53 Pa. St., 219: "Exemptions, no matter how meritorious, are of grace, and must be strictly construed."    We hold, therefore, that improvements, placed by individuals upon government land, are, before final proof, the property of such individuals; that the constitution and the statutes passed thereunder contemplate the taxation of all property not specifically exempted, and that such improvements have not been exempted and are subject to taxation.    There is a marked distinction between the power to tax improvements and the power to tax the land itself.    The relator seeks only to compel a taxation of the improvements.

2. Are the interests of lessees and purchasers of school lands subject to taxation?    The principles already dis-

cussed go far towards settling this question. The statutes, we think, settle it beyond question. As to lessees, section 5 of the revenue law provides that "leasehold estates, including leases of school and other lands of the state, shall be valued at such a price as they would bring at a fair voluntary sale for cash." This provision demonstrates that leasehold estates in school lands were deemed by the legislature to fall within the designation of taxable property in section 1 of the revenue law, "all real and personal property in this state." The act nowhere exempts such property, and it is at least doubtful whether under the constitution there could be any such exemption. As to purchasers of school land, section 3 of the revenue law provides expressly that "school lands sold under any provisions of any law of this state, or such as have heretofore been sold, shall not be taxable until the right to a deed shall have become absolute, except the value of the interest of such purchasers shall be taxable, which interest shall be determined by the amount paid and invested in improvements on such lands." Even in the absence of this specific provision, section 12 of the revenue law would be broad enough to cover the case. That section provides : "When real estate is exempt in the hands of the holder of the fee, and the same is contracted to be sold, the amount paid thereon by the purchaser, with the enhanced value of the investment and improvement thereon until the fee is conveyed, shall be held to be personal property and listed and assessed as such, in the place where the land is situated."

In *Hagenbuck v. Reed*, 3 Neb., 17, the court held that, under the law as it then stood, school lands sold on credit were subject to taxation. In 1879 an act was passed reciting that such lands "have not been and are not now taxable," and then providing for the repayment of taxes theretofore paid on such lands. This court held in *Washington County v. Fletcher*, 12 Neb., 356, that this act was constitutional, and that its effect was to relieve such lands

Farwell v. Cramer.

from taxation, or rather to nullify past taxation. From this decision Judge LAKE dissented in a very vigorous opinion. The case related to the repayment of taxes levied before the revenue law of 1879 was passed, and the provisions quoted from that act were not referred to and were not applicable to the case adjudicated. The decisions of this court are not in conflict with the construction we place upon the revenue law.

We think the district court erred in refusing the writ of *mandamus* prayed.

REVERSED AND REMANDED.